IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| Conair Corporation,<br>Plaintiff,<br><br>v.<br><br>Next G, Corp., et al.<br>Defendants. | Civil No. 20-1093 (SCC) |

**REPORT AND RECOMMENDATION**

Yiwu Skywell Import & Export Co., Ltd. ("Yiwu") has been sued for trademark infringement and trademark counterfeiting under the Lanham Act, 15 U.S.C. § 1114(1), false designation of origin and trademark and trade dress infringement under the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), and patent infringement under the Patent Act, 35 U.S.C. § 271. Docket No. 17. Conair Corporation ("Conair") alleges that Yiwu is a Chinese supplier that sells counterfeits of Conair's products to businesses in the United States and elsewhere. Id. Despite being served, Yiwu failed to appear and defend itself from Conair's claims. See Docket No. 31. Default was entered against Yiwu on December 17, 2021. Docket No. 39. Conair now seeks the entry of judgment by default against Yiwu, and the award of statutory damages for violations to the Lanham Act, attorneys' fees, prejudgment and post-judgment interests, and costs. Conair has also requested a permanent injunction. Docket No. 48.

The District Judge referred the matter to the undersigned for a hearing on damages and a Report and Recommendation. Docket No. 49. An evidentiary hearing was held on March 3, 2023. Docket No. 55. The Court heard the testimony of Mr. Melvin Granados, Conair's Director of International Sales for Latin America. Documentary evidence was admitted. For the reasons discussed below, the undersigned recommends that Conair's motion for the entry of judgment by default be **GRANTED in part and DENIED in part** and that judgment be entered awarding Conair monetary and injunctive relief, consistent with this recommendation.

**I.    Findings of Fact**

After reviewing factual allegations in the Amended Complaint, including the exhibits submitted in support thereof (Docket Nos. 17 and Exhibits A-C), which have all been deemed

1

admitted by Yiwu on account of the entry of default under Rule 55 of the Federal Rules of Civil Procedure (In re Home Rests., Inc., 285 F.3d 111, 114 (1st Cir. 2002) (quoting Franco v. Selective Ins. Co., 184 F.3d 4, 9 n.3 (1st Cir. 1999) ("A party who defaults is taken to have conceded the truth of the factual allegations in the complaint as establishing the grounds for liability") (citations omitted), and in consideration of the testimony and evidence received during the hearing, the Court makes the following findings of fact.

1. Conair is well known in the United States and elsewhere as a source of high-quality hairstyling products sold under the names of "Conair" and "BaByliss". Docket No. 17 ¶ 12.

2. Conair's BABYLISS products are distributed and sold to consumers through retailers throughout the United States at points of sale locations and on the internet, including through its website www.babylisspro.com. Docket No. 17 ¶ 13.

3. Conair has continuously sold hairstyling products under its BABYLISS trademarks (BABYLISS AND BABYLISSPRO, collectively "BABYLISS marks"). Docket No. 17 ¶ 14.

4. Conair has built substantial goodwill in the BABYLISS marks. Docket No. 17 ¶ 14.

5. Conair is the exclusive owner of the trademark BABYLISS registered in the United States Patent and Trademark Office (USPTO), Reg. No.1,148,225. Docket No. 17 ¶ 15 and Exhibit A.

6. Conair is the exclusive owner of the trademark BABYLISSPRO registered in the USPTO, Reg. No. 4,561,367. Docket No. 17 ¶ 15; Exhibit B.

7. The BABYLISS marks are valid, subsisting, and incontestable. Docket No. 17 ¶ 16.

8. Conair is the owner of the design patent related to the BABYLISS hair styling iron numbered U.S. Patent No. D596, 790 ("790 Patent"). Docket No. 17 ¶ 24; Exhibit C.

9. Conair is the owner by assignment of all right, title and interest in and to the 790 Patent. Docket No. 17 ¶ 24.

10. The BABYLISS marks have been continuously used by Conair throughout the United States, on or in connection with the manufacture, distribution, sale and promotion of its products. Docket No. 17 ¶ 18.

11. The BABYLISS marks are distinctive and signify to the consuming public that products that come from Conair are manufactured to the highest standard of quality. Docket No. 17 ¶ 19.

12. Conair has marketed its high-quality hairstyling tools with consistent and earnest effort to the American public. As a result of the high-quality hairstyling tools provided to its customers, and its reputation for the same, the BABYLISS marks have become valuable assets and are famous. Docket No. 17 ¶ 20.

13. As a direct result of the time and effort promoting the BABYLISS marks, Conair's customers, its competitors, and the general public have come to associate the high-quality hairstyling products and tools offered by Conair with its BABYLISS marks. Docket No. 17 ¶ 21.

14. Conair products have been widely accepted by the public and are enormously popular, as demonstrated by the ongoing sales of BABYLISS products each year. Docket No. 17 ¶ 22.

15. As a direct result of Conair's substantial investment in the BABYLISS marks, they have become famous throughout the United States. Docket No. 17 ¶ 22.

16. The BABYLISS marks have come to represent and symbolize the excellent reputation of Conair's products and valuable goodwill among members of the public throughout the world and in the United States, including Puerto Rico. Docket No. 17 ¶ 23.

17. Conair spends millions of dollars in technology, safety, and advertisement to make people aware of the high quality of its products, including those sold under the BABYLISS marks. Testimony of M. Granados.

18. Conair spends millions of dollars to promote the goodwill associated with the Conair products and the BABYLISS marks. Testimony of M. Granados.

19. On or about September 5, 2019, an agent for Conair visited Farmacia Savia and saw that hair styling tools purporting to be BABYLISSPRO products were being sold. Docket No. 17 ¶ 26.

20. The hair styling tools in Farmacia Savia bore the BABYLISSPRO mark (identical logo and trademark). Docket No 17 ¶ 17; Docket No. 56 at Exhibit 4.

21. The hair styling tools in Farmacia Savia appeared substantially similar or identical to and thus fully embody the 790 Patent. Docket No 17 ¶ 25; Docket No. 56 at Exhibits 3-4.

22. The hair styling tools' packaging in Farmacia Savia contained a reference to both BABYLISS marks and was also identical to that of the original BABYLISSPRO product. The hair styling tools' packaging in Farmacia Savia also had the 790 Patent information. Docket No 17 ¶ 17; Docket No. 56 at Exhibits 2-4.

23. The hair styling tools in Farmacia Savia were counterfeits not manufactured by Conair or BaByliss (hereinafter, "Counterfeit Products"). Docket No 17 ¶ 27; Docket No. 48-1 ¶ 2; Testimony of M. Granados.

24. Farmacia Savia obtained the Counterfeit Products from Yiwu. Docket No 17 ¶ 28; Docket No. 56 at Exhibit 1.

25. Yiwu is a Chinese corporation with principal place of business in China. Docket No 17 ¶ 9.

26. Yiwu has imported, distributed, offered for sale, sold, and induced or conspired with others to import, distribute, offer for sale, or sell counterfeit BABYLISS products in the United States, including Puerto Rico. The Counterfeit Products bore counterfeits of the BABYLISSPRO mark on the product packaging, package inserts, and/or the product. Docket No 17 ¶ 29.

27. The Counterfeit Products are not genuine Conair products. Conair did not manufacture, inspect, or package the Counterfeit Products and did not approve of, authorize, endorse, or license the Counterfeit Products. Docket No 17 ¶ 30.

28. Yiwu's use of the BABYLISS marks on the Counterfeit Products is likely to cause confusion or mistake or to deceive persons into the erroneous belief that the Counterfeit Products are genuine Conair products or that Yiwu or the Counterfeit Products are authorized, endorsed, or sponsored by Conair or are connected in some way to Conair. Docket No 17 ¶ 31.

29. Most people would not be able to distinguish between the Counterfeit Products and the original Conair products. Testimony of M. Granados.

30. Yiwu's use of the BABYLISS marks was deliberate and intentional, and designed to create confusion, and to deceive consumers, making them believe that the Counterfeit Products are authorized, endorsed, or sponsored by Conair. The similarities between the hair styling tools in Farmacia Savia and the Conair products could not have been unintentional. The counterfeits were designed intentionally and purposefully to resemble the Conair products. Docket No 17 ¶ 32; Testimony of M. Granados.

31. Yiwu is not now, and has never been, licensed to produce, market, offer to sell, or sell products bearing the BABYLISS marks. Docket No 48-1 ¶ 4.

32. Yiwu's use of the BABYLISS marks in the Counterfeit Products falsely designates the origin of its products and includes false descriptions and representations to the effect that the Counterfeit Products are genuine Conair products. Docket No 17 ¶ 33.

33. Counterfeit operations in China, such as that of Yiwu, make millions of dollars in the sale and distribution of counterfeit products, such as the Counterfeit Products. Testimony of M. Granados.

34. Conair loses millions of dollars each year on account of the sale and distribution of counterfeit products, such as the Counterfeit Products.

35. Yiwu's sale of the Counterfeit Products causes harm to Conair, including lost sales because the people who buy the counterfeits would have bought original Conair products. Docket No 17 ¶ 35; Testimony of M. Granados.

36. Conair has also suffered and is suffering a loss of goodwill due to the sale of counterfeits, such as the Counterfeit Products. Docket No 17 ¶ 35; Docket No. 48-1 ¶ 7; Testimony of M. Granados.

37. Conair is damaged by the sale of the Counterfeit Products because purchasers could acquire the products under the mistaken belief that the Counterfeit Products are genuine Conair products. Docket No 17 ¶ 34; Docket No 48-1 ¶ 5; Testimony of M. Granados.

38. There is no guarantee that customers who purchase the Counterfeit Products will receive the level of quality associated with the Conair products. Customers will misattribute any shortcomings in the Counterfeit Products to Conair. Docket No 48-1 ¶¶ 5-6.

39. Counterfeit Products do not have the high-quality standards of Conair products and do not have the safeguards of the Conair products. The lack of safety of the Counterfeit Products could cause damages to consumers, such as burns due to unregulated high temperatures. Testimony of M. Granados.

40. The sale of Conair's BABYLISSPRO products in Latin America, including Puerto Rico, generate more than $1,000,000 annually. Testimony of M. Granados.

**II.    Conclusions of Law**

**1. Statutory Damages**

Conair seeks an award of $6,000,000 in statutory damages. Conair breaks it down to $2,000,000 per each mark infringed by Yiwu: BABYLISS, BABYLISSPRO, and the BABYLISSPRO trade dress. $2,000,000 is the maximum statutory damages allowed under the Lanham Act. Even though Yiwu is in default and has consequently admitted all well-pleaded factual allegations in the Amended Complaint (Goldman, Antonetti, Ferraiuoli & Hertell v. Medfit Intern., Inc., 982 F.2d 686, 693 (1st Cir. 1993)), plus has failed to provide the Court with any information that would permit an allocation of infringer's profits, the Court deems that the amount sought by Conair is excessive and recommends an adjustment as follows.

Under Section 32 of the Lanham Act, any person that without the consent of the owner of a registered mark "(a) use[s] in commerce any reproduction, counterfeit, copy, or colorable

imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or (b) reproduce[s], counterfeit[s], cop[ies], or colorably imitate[s] a registered mark and appl[ies] such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive" will be liable to the owner of the mark for trademark infringement and trademark counterfeiting. 15 U.S.C. § 1114.

To succeed on a claim of trademark infringement under the Lanham Act, "a plaintiff must establish (1) that its mark is entitled to trademark protection, and (2) that the allegedly infringing use is likely to cause consumer confusion." Boston Duck Tours, LP v. Super Duck Tours, 531 F.3d 1, 12 (1st Cir. 2008) (citing Borinquen Biscuit Corp. v. M.V. Trading Corp., 443 F.3d 112, 116 (1st Cir. 2016)). If a mark is registered in the USPTO, the first prong of the trademark infringement cause of action— entitlement to trademark protection— is met. Niagara Bottling, LLC v. CC1 Ltd. P'ship, 381 F.Supp.3d 175, 183 (D.P.R. 2019). The First Circuit evaluates eight factors to determine whether there is a likelihood of confusion between two marks: (1) the similarity of the marks; (2) the similarity of goods or services; (3) the relationship between the parties' channel of trade; (4) the relationship between the parties' advertising; (5) the classes of prospective buyers; (6) evidence of actual confusion; (7) the defendant's intent in adopting the mark; and (8) the strength of the plaintiff's mark. Pignons S. A. de Mecanique de Precision Corp. v. Polaroid Corp., 657 F.2d 482, 487 (1st Cir. 1981). And a counterfeit mark is that which is "is identical with, or substantially indistinguishable from" a registered mark. 15 U.S.C. § 1116(d)(1)(B)(ii). The BABYLISS and BABYLISSPRO marks are registered in the USPTO. Conair is the exclusive owner of both marks. Yiwu sold hair styling products to Farmacia Savia bearing the BABYLISS marks. These products were essentially identical to Conair's BABYLISSPRO product; intended for the same use, sold in the same channel of trade, and targeted to the same class of prospective buyers. Consumer confusion was imminent. Indeed, the hair styling tools in Farmacia Savia were counterfeits not manufactured by Conair and most people would not be able to distinguish between the Counterfeit Products and the original Conair products. Per the above, there is no question that

Conair has established its claims for trademark infringement and counterfeiting for Yiwu's unauthorized use of the BABYLISS and the BABYLISSPRO marks.

Under Section 43(a)(1)(A) of the Lanham Act, "[A]ny person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person" will be liable for any damages caused as a result thereof. 15 U.S.C. § 1125. Conair's claim for violation to Section 43(a) of the Lanham Act stems from Yiwu's unauthorized use of the BABYLISSPRO trade dress.

A trade dress is the overall appearance of labels, wrappers, and containers used in the packaging of a product, but it can also include the shape and design of the product itself. 1 McCarthy on Trademarks and Unfair Competition at 8.4-8.5 (4th ed. 2013); Wal-Mart Stores, Inc. v. Samara Bros, Inc., 529 U.S. 205, 209 (2000). Trade dress infringement claims seek to avoid consumer confusion as to the origin of a product or its source. I.P. Lund Trading APS v. Kohler Co., 163 F.3d 27, 35 (1st Cir. 1998). To establish a cause of action for trade dress infringement under Section 43(a) of the Lanham Act, the plaintiff must prove that (1) it has a non-functional trade dress, (2) that is distinctive, and (3) that the accused trade dress is likely to cause confusion as to the source of the product for which protection is sought. Wal-Mart Stores, 529 U.S. at 209; 1 McCarthy on Trademarks at § 8.1. Packaging that is a useful feature of a product may be functional. I.P. Lund Trading, 163 F.3d at 36. An examination of the packaging of the BABYLISSPRO product at Docket No. 56-1 (Exhibit 3), reveals that it is not functional. The package is made of clear plastic so that the entire product can be seen from the outside, it bears a reference to temperature and the time it takes for the product to achieve straight hair, and it includes a reference to specific specs of the product. Packaging is distinctive when the public has come to associate the total image of the package with one source or origin. 1 McCarthy on Trademarks at § 8.8. The package at issue here is also distinctive, as it makes clear reference to the BABYLISSPRO mark, which is also a direct reference to BaByliss, the name associated with the products sold by Conair and its website (www.babylisspro.com). See Docket No. 17 ¶¶ 12-13, 19.

7

And there is no dispute that the package of the Counterfeit Products is essentially identical to that of the BABYLISSPRO product, and that consumer confusion is almost certain.

Having found that liability as to the three marks (BABYLISS, BABYLISSPRO and the BABYLISSPRO trade dress), was established, we move on to Conair's request for statutory damages. In a case involving the willful use of a counterfeit mark, a plaintiff may elect an award of statutory damages in the amount of "not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c). Because the statute provides that any award of statutory damages is subject to that which the "court considers just", the statute gives the court wide discretion. 5 McCarthy on Trademarks at § 30:95. As recited in the findings of fact, there is sufficient evidence of willfulness and counterfeiting here to trigger the provision of statutory damages of the Lanham Act. But the Court deems that awarding the maximum statutory damages of $2,000,000 per each of the three marks would be a windfall.

There is no concrete evidence of lost sales or actual damages suffered by Conair on account of Yiwu's infringement. There is also no concrete evidence as to profits generated by Yiwu on account of the sale of the Counterfeit Products or as to how many Counterfeit Products were ultimately sold by Yiwu to Farmacia Savia. And while the imposition of statutory damages is meant to fill this gap; statutory damages of $2,000,000 per counterfeit mark are not automatic. Indeed, a review of case law demonstrates that, far from being the norm, the imposition of maximum statutory damages is an exception. See e.g., Playboy Enterprises, Inc. v. Universal Tel-A-Talk, Inc., 1998 WL 767440 * 9 (E.D.Pa.) ($10,000 statutory damages); Rolex Watch U.S.A., Inc. v. Lizaso-Rodriguez, 2012 WL 1189768 *4 (S.D.Fla.) ($50,000 per mark); State of Idaho Potato v. G&T Terminal Packaging, 425 F.3d 708, 720 (9th Cir. 2005) ($100,000 statutory damages); Nike Inc. v. Variety Wholesalers, Inc., 274 F.Supp.2d 1352, 1374 (S.D.Ga. 2003) ($100,000 per mark on type of product); Capbran Holdings, LLC v. TRI Locua International, LLC, 2017 WL 11631504 * 6 (C.D.Cal.) ($250,000 per mark); Volkswagen Group of America, Inc. v. Varona, 2021 WL 1997573 *10-15 (S.D.Fla.) ($304,613.55 per mark); New Balance Athletics, Inc v. USA New Bunren International Co., 2020 WL 5593932 *1-3 (D.De.) ($504,000 statutory damages); Louis Vuitton Malletier v. Akanoc Solutions, Inc., 658 F.3d 936, 946 (9th Cir. 2011) ($807,692 per mark); UL LLC v. Space Charlot Inc., 250 F.Supp.3d 596, 614 (C.D.Cal. 2017) ($1,000,000 total statutory damages; more than two marks). This holds true in cases where the

8

defendant is in default. See e.g., Yelp Inc. v. Catron, 70 F.Supp.3d, 1102-1103 (N.D.Cal. 2014) ($45,000; defendant on default); Disney Enterprises, Inc. v. Away Discount, 778 F.Supp.2d 157, 162-169 (D.P.R. 2010) ($75,000 per mark to each infringing wholesaler; defendants on default). Indeed, rather than automatically imposing the statutory maximum, courts have tried to come up with a formula that could result in an amount reasonably related to the facts of the case. See Volkswagen Group of America, 2021 WL 1997573 at *10-15 (considering value of the mark, time registered, investment in goodwill and policing of trademark, deterrence effect, willfulness, defendant's lack of cooperation during litigation, and safety concerns of the infringing products); New Balance Athletics, 2020 WL 5593932 at *1-3 (considering dollar value of the violation and multiplying it by three variables: number of counterfeit marks, number of types of goods, and three (3) for willfulness).[1]

Considering the strength of Conair's marks and the fact that BABYLISS has been in use since at least the year 1960 (see Docket No. 17, Exhibit A), the testimony and documentary evidence regarding Conair's substantial investment in the goodwill of its marks, that the marks are distinct and famous, and that the Counterfeit Products could compromise the safety of consumers[2], the Court considers that a starting point of $100,000 as a dollar value for each of the infringed marks is reasonable. See Disney Enterprises, 778 F.Supp.2d at 162-169 ($75,000 per mark infringed by "wholesalers" trafficking large quantities of counterfeit merchandise). This dollar value is multiplied by three (3) to account for Yiwu's willful and deliberate infringing conduct in the sale of the Counterfeit Products in Puerto Rico. This renders a total of $300,000 per infringed mark. The Court thus recommends that Conair's request for statutory damages under the Lanham Act be **GRANTED in part and DENIED in part**, and that statutory damages be awarded to Conair in the total amount of $900,000.

---

[1] In support of its request that the Court award the statutory maximum under the Lanham Act, Conair cites to First Circuit cases discussing statutory damages under the Copyright Act, 17 U.S.C. § 504(c). However, while the Court may certainly look to the Copyright Act for guidance, the statutory maximum under the Copyright Act is substantially lower ($150,000) than the $2,000,000 under the Lanham Act. The Court chooses to focus on cases under the Lanham Act.

[2] "If the counterfeit goods are inferior in quality and pose a potential risk to public safety, this justifies a larger award of statutory damages." 5 McCarthy on Trademarks at § 30:95.

### 2. Attorneys' Fees

Conair seeks attorneys' fees under 15 U.S.C. § 1117(a). Section 1117(a) of the Lanham Act provides that "[t]he Court in exceptional cases may award reasonable attorneys' fees to the prevailing party." 15 U.S.C. § 1117(a). Exceptional cases are those in which "acts of infringement were "'malicious,' 'fraudulent,' 'deliberate,' or 'willful.'" Tamko Roofing Prod., Inc. v. Ideal Roofing Co., 282 F.3d 23, 31 (1st Cir. 2002) (quoting S. Rep. 93–1400, at 5 (1974)). An award of attorney's fees under Section 1117(a) in 'exceptional' cases is available for plaintiffs who pursue statutory damages under Section 1117(c). Louis Vuitton Malletier S.A. v. LY USA, Inc., 676 F.3d 83, 110 (2d Cir. 2012); see e.g., Malletier v. Lincoln Fantasy, 2006 WL 2129025 *8 (D.P.R.); Lacoste Alligator, S.A. v. Sugar Shack, Inc., 2006 WL 8449044 *7 (D.P.R.). Courts look at the totality of the circumstances to determine whether a case is "exceptional". Tamko Roofing, 282 F.3d at 30-33.

Having found that Yiwu sold counterfeits which were essentially identical to original Conair products, there can be little question that Yiwu's copying was intentional and deliberate. Yiwu must have had knowledge that the sale of the Counterfeit Products was unauthorized. Nonetheless, Yiwu intended to reap the benefits of the goodwill associated with the Conair products. There is sufficient evidence to hold that this case is "exceptional"; Yiwu willfully and deliberately intended to confuse the consumer into thinking that the cheaper hair styling tools were of the high quality generally attributed to the original Conair products. And despite being served, Yiwu failed to appear to defend this case. Under the totality of the circumstances, an award of reasonable attorneys' fees in favor of Conair is warranted. The Court recommends that Conair's request for reasonable attorneys' fees be **GRANTED**.

### 3. Prejudgment Interests

The majority view is that the recovery of prejudgment interests in trademark infringement cases is warranted. 5 McCarthy on Trademarks at § 30:93. Indeed in cases of trademark counterfeiting, the Lanham Act provides for an award of prejudgment interests. 15 U.S.C. § 1117(b). Conair has cited case law for the proposition that an award of prejudgment interest is an appropriate remedy even when the plaintiff has sought statutory damages under 15 U.S.C. § 1117(c) as is the case here.[3] But the matter is ultimately left to the discretion of the Court. 5

---

[3] Like Section 1117(a), Section 1117(c) of the Lanham Act does not expressly provide for an award of prejudgment interests. That is, the only section that expressly contemplates the imposition of

McCarthy on Trademarks at § 30:93; see e.g., Perfumania, Inc. v. Perfulandia, Inc., 2004 WL 1753249 *22 (D.P.R.) (recommending an award of prejudgment interest in an "exceptional" case under Section 1117(a) of the Lanham Act).

Using the rationale applied to Conair's request for attorneys' fees, the Court finds that this is an "exceptional" case of deliberateness and willfulness in the copying of the three marks. The Court recommends that Conair's request for prejudgment interests be **GRANTED but that prejudgment interests be calculated from the date of service of the Amended Complaint on July 15, 2021, as allowed under 15 U.S.C. § 1117(b)**. See Docket No. 31. See also Docket No. 48 at n. 4.

### 4. Post-Judgment Interests and Costs

As a prevailing party, Conair is also entitled to costs pursuant to Federal Rule of Civil Procedure 54(d)(1); see also 15 U.S.C. § 1117(a). Furthermore, Conair is entitled to post-judgment interest under 28 U.S.C. § 1961(a) ("Interest shall be allowed on any money judgment in a civil case recovered in a district court."). Conair's request for an award of post-judgment interests and costs should be **GRANTED**.

### 5. Injunctive Relief

Conair has requested that the Court issue a permanent injunction against Yiwu. "An injunction is the usual and standard remedy once trademark infringement has been found." 5 McCarthy on Trademarks at § 30:1. Indeed, under 15 U.S.C. § 1116(a), "courts vested with jurisdiction of civil actions arising under this chapter shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent" future violations to the Lanham Act. To be entitled to a permanent injunction under the Lanham Act, the Court must find that Conair demonstrated that (1) it has suffered irreparable injury, (2) monetary damages are inadequate to compensate for the injury, (3) in the balance of hardships, a remedy in equity is warranted, and (4) public interests will not be disserved by a permanent injunction. The Shell Co. (P.R.) Ltd. v. Los Frailes Serv. Station, Inc., 605 F.3d 10, 19 (1st Cir. 2010) (quotations and citations omitted). All four factors weigh in favor of granting Conair's request for a permanent injunction.

---

prejudgment interests is the section that allows for the imposition of treble damages in a counterfeiting case; Section 1117(b).

Conair has suffered irreparable damages and would continue to suffer irreparable damages in the absence of injunctive relief. The Court has already concluded that Yiwu has violated Conair's rights with respect to its three marks, BABYLISS, BABYLISSPRO and the BABYLISSPRO trade dress. The Court has also concluded that Yiwu has manufactured and sold counterfeit products that are essentially identical to those of Conair. And that Conair has invested greatly in the goodwill associated with its marks and in the development of high quality and safe products. Unless Yiwu is enjoined from continuing to sell the Counterfeit Products, Conair will continue to suffer irreparable injury, particularly to its reputation and the goodwill associated with its marks. Consumers would be induced to purchase cheap knockoffs believing that they are acquiring high quality Conair products and, because there is no way of distinguishing between the counterfeits and the Conair products, consumers will misattribute any shortcomings in the Counterfeit Products to Conair. This is clearly an irreparable injury to Conair's reputation and goodwill.

Monetary damages are inadequate to compensate Conair for its injuries. If not enjoined, Yiwu will continue to sell its counterfeits in Puerto Rico, further damaging Conair's reputation and goodwill. As cited by Conair in its brief, "[b]y its very nature injury to goodwill and reputation is not easily measured or fully compensable in damages". Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 20 (1st Cir. 1996). As such, this factor also weighs in favor of granting injunctive relief.

The balance of hardships and the public interest also favor equitable relief in this case. The Court cannot attribute any legitimate interest to Yiwu's counterfeiting. And Yiwu has failed to defend itself. Therefore, there are no potential hardships to Yiwu that the Court can consider. Finally, an injunction would greatly serve the public interest here. Public interest favors that the Court enjoin any further violations to federal law. Public policy also favors avoiding consumer confusion. And, most importantly, the public interest favors that consumers are not tricked into buying a cheaper quality product, while thinking that such a product is of high quality. Given that the products at issue involve the use of electricity and high temperatures to style hair, there are real safety concerns associated with allowing consumers to continue to buy Yiwu's counterfeits.

Notwithstanding the foregoing, as requested, Conair seeks that the Court order the United States Customs and Border Protection ("CBP") to "effectuate the prohibition on importation as contained in this Order" so that no counterfeits are imported by Yiwu in violation of the Court's

permanent injunction. See Docket No. 48-3 at V. Conair has cited some authority for the proposition that this Court can, like the International Trade Commission, issue broad orders directing the CBP to exclude infringing articles. See Docket No. 57. While the Court recognizes that it has discretion to craft injunctive relief to prevent further infringement, the Court is not convinced that an order to CBP is reasonable at this juncture. Permanent injunctions under the Lanham Act may be issued against the infringing party and against nonparties who aid and abet infringing parties or their legal agents. 5 McCarthy on Trademarks at § 30:14. Conair is at liberty to approach CBP with a copy of the Court's permanent injunction to put the agency on notice of the prohibitions set forth in the order. However, the Court is of the opinion that, **without more**, it should not issue equitable relief that could potentially interfere or dictate CBP's procedures on policing the entry of counterfeits into the United States. For this reason, the Court recommends that, while a permanent injunction should be issued under substantially the same terms proposed by Conair at Docket No. 48-3, such an order should be limited to enjoining actions of Yiwu, "its affiliated companies, parents, subsidiaries, successors, assigns, and other related business entities, and their officers, agents, servants, employees, and attorneys, and all persons who are in active concert or participation with any of them".

### III.     Conclusion

For the reasons discussed above, the Court recommends that Conair's motion for default judgment at Docket No. 48 be **GRANTED in part and DENIED in part**. The Court recommends that statutory damages be awarded in the total amount of $900,000, and that an award of reasonable attorneys' fees, prejudgment interests pursuant to 15 U.S.C. § 1117(b), post judgment interests and costs be granted in favor of Conair. The Court further recommends that the Court grant injunctive relief, as requested by Conair in the proposed order submitted at Docket No. 48-3, except for that which was included in page 8 at paragraph V.

**IT IS SO RECOMMENDED.**

This Report and Recommendation is issued pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 72(d) of the Local Rules of this Court. Any objections to the same must be specific and must be filed within **THE SHORTENED PERIOD OF TEN (10) DAYS** of its receipt. Failure to file timely and specific objections to the Report and Recommendation is a waiver of the right to review by the District Judge and of appellate review. Thomas v. Arn, 474 U.S. 140, 154-155 (1985);

United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992).

In San Juan, Puerto Rico, this 17th day of March 2023.

                                                          s/Giselle López-Soler
                                                          GISELLE LÓPEZ-SOLER
                                                          United States Magistrate Judge